James Bradley Bailey
1008 Putnam Ave.
North Las Vegas, NV. 89030
702-768-2883
bradleybailey@hotmail.com

## UNITED STATES DISTRCIT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| James Bradley Bailey,<br><br>Plaintiff,<br><br>v.<br><br>Bank of America Corporation; OneWest Bank; Wells Fargo Bank; Suntrust Bank; Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2005-4, GSAA Home Equity Trust 2006, And All persons Unknown, Claiming any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintiff's Title, or Any Cloud on Plaintiff Title Thereto; Korn Law Firm, P.A.; Brock and Scott, PLLC; Rogers, Townsend & Thomas, PC.; And Does 1 through 25, inclusive,<br><br>Defendants. | CASE NO:<br><br>COMPLAINT FOR:<br><br>VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES<br><br>FAIR CREDIT REPORTING ACT<br><br>VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT (S.C. Code 39-5-10 et. seq.)<br><br>ACTION FOR DECLARATORY REILEIF FOR JUDGMENTS OBTAINED BY FRAUD<br><br>WRONGFUL FORECLOSURE<br><br>QUIET TITLE<br><br>DEMAND FOR JURY TRIAL |

Comes now, Plaintiff, James Bradley Bailey, ("Bailey"), for his Complaint against

Defendants: Bank of America (hereinafter "BofA"), OneWest Bank ("OneWest"), Wells Fargo

Bank ("Wells Fargo") Suntrust Bank ("Suntrust") all collectively sometimes referred to as

"Banks or Bank Defendants", Korn Law Firm, P.A., John B. Kelchner, Brock and Scott, PLLC,

1
COMPLAINT

Rogers Townsend & Thomas, PC. (sometimes collectively "Law Firm Defendants") and pleads as follows:

1.      There are major defects in the foreclosure pleadings filed with the South Carolina Court of Common Pleas, and/or before Masters in Equity ("Foreclosure Actions" and sometimes "Foreclosure Complaints"). Specifically, Foreclosure Complaints were filed and judgments of foreclosure were obtained on five of six properties owned by Plaintiff. A final Notice of Sale has not been issued yet, none of the Properties have been sold, so the Foreclosure Actions have not been completed. All five judgments are void for fraud and/or other misconduct (Such judgments are void under both federal and South Carolina law and can be challenged at any time).[1]  In the sixth foreclosure, it was recently filed, but has not yet been served. There were gross violations of Due Process since the Plaintiff was never properly served on any of the Foreclosure Actions.

2.      The six properties are commonly known as:

- 310 Shadowfield Drive , West Columbia, SC. 29169 ("Shadowfield Property");

- 383 Golden Jubilee Road, Gilbert, SC. 29054  ("Golden Jubilee Property");

- 201 Crown Point Road, Lexington, SC. 29073 ("Crown Pointe Property");

- 123 Weaver Drive, Lexington, SC. 29073 ("Weaver Property");

- 108 Westpointe Court, Lexington, SC. 29073 ("108 Westpointe Property"); and

- 120 Westpointe Court, Lexington, SC. 29073 ("120 Westpointe Property").

---

[1] F.R.C.P. Rule 60. S.C.R.C.P. Rule 60. "A void judgment is one that, from its inception, is a complete nullity and is without legal effect." *Thomas & Howard Co. v. T.W. Graham and Co.*, 318 S.C. 286, 291.

2
COMPLAINT

("Properties") For convenient reference a chart of the Properties and corresponding case numbers, securitization trusts ("Trusts"), and parties for each, is submitted herewith as Exhibit "A".

3.      Under the law, Plaintiff may challenge void judgments in a separate legal action in any court, at any time, and does so herein (*Pacific R. Co. of Mo. v. Missouri Pacific R. Co.*, 111 U.S. 505 (1884) foreclosure legal action where fraud committed could be attacked in separate action; *U.S. v. Beggerly*, 524 U.S. 38 (1998).

4.      Defendants engaged in unlawful or fraudulent conduct by filing or causing the Foreclosure Actions to be filed with knowledge that they contained deliberate misstatements and misrepresentations. For example, on some of the Properties other "Too Big To Fail" banks were named as Defendants, which makes no sense. The Defendants are so confused and arrogant; they caused liens to be filed by entities and/or persons that have no interest in the Properties. Then to attempt to correct the error, they sued them. These defects in title, created by them merely demonstrate more of the criminal fraud.

5.      Defendant Law Firms cannot represent the trustees of the Trusts, or the interests of the investors, because the investors are suing them in class actions regarding the same loans, and other counsel represents the trustees. Any representation that the Defendants have the right to represent the Trusts or their investors is a blatant fraud.

6.      As was the custom, entities other than licensed South Carolina attorneys prepared documents related to the loans such that the documents, including mortgages and assignments, and are also void for this reason. Several of the mortgages state on their face they were prepared by an entity not a South Carolina law firm.

---

3
COMPLAINT

7.    Plaintiff Wells Fargo produced a manual ("Manual") for the "foreclosure mill" law firms instructing them how to create fraudulent and forged documents to foreclose. Plaintiff is informed and believes that as to those Foreclosure Cases where Wells Fargo was a party the Manual was used and/or similar instructions provided.

8.    There was no proper service of process made even though Defendants knew the actual address of Plaintiff. Defendants did personally serve one of the Foreclosure Actions on Plaintiff such that they could have done so on all of them and his address was in the court dockets and other records.

9.    The plaintiffs in the Foreclosure Complaints (Defendants herein) had no standing so the state court had no jurisdiction.

10.    The Loans were securitized.  Two of the Trusts are the Soundview Trust and one GSAA Trust (more specifically defined below.)

11.    The Banks have destroyed countless institutional investors such as public pension funds and government entities, most of which have filed suit.

12.    The GSAA Trust has been the subject of a number of class action lawsuits by the investors claiming they were defrauded in many ways. (i.e. *Public Employment Retirement System of Mississippi, et. al. v. Goldman Sachs Group, et. al.*, U.S. Dist. Court for the Southern District of New York, #1:09-cv-01110.  The case has been on appeal and was apparently settled but still pending in January 2014).

13.    As to each of the Properties, it is beyond dispute any assignments of the mortgages were fraudulent, "robo-signed", and void.

**4**
**COMPLAINT**

14.     Through this action, Plaintiff seeks a declaration by the court that any state court judgments are void, and for damages resulting from Defendants' unlawful conduct, and a declaratory judgment establishing the future rights and obligations of the parties.

## I
## THE PARTIES

15.     Plaintiff is now, and at all times mentioned herein, was an individual residing in the State of Nevada in Clark County. At all times relevant to this action, Plaintiff has owned an interest in the Properties.

16.     BofA is a national bank, headquartered in North Carolina, and the Plaintiff for the foreclosure of the mortgage on the "Weaver Property."

17.     Defendant Deutsche is an international bank with its principal place of business at in Frankfurt, Germany. Defendant Deutsche and claimed to be the named Trustee for Soundview Home Loan Trust 2005-4 ("Soundview Trust") at various times.

18.     At all times mentioned herein, Defendant Soundview Home Loan Trust 2005-4 was, and is, the trust that three of six of Plaintiff's properties were purportedly securitized within. The Trust was formed under New York Law, with its principal place of business in New York, N.Y. The documents are filed with the Securities and Exchange Commission ("SEC"). CIK #0001347120 and found here:

http://www.sec.gov/cgi-bin/browse-edgar?company=Soundview+Home+Loan+Trust+2005-4+&owner=exclude&action=getcompany.

19.     The Closing Date of the Soundview Trust was December 21, 2005, and Cut off date December 1, 2005.

http://www.sec.gov/cgi-bin/browse-edgar?company=Soundview+Home+Loan+Trust+2005-4+&owner=exclude&action=getcompany.

20.    The Soundview Trusts, as a group, have been the subject of highly publicized legal actions, including, but not limited to, the recent suit by Wells Fargo against the City of Richmond, California (United States Dist. Court, Northern Dist. Of Cal. #cv-13-3663.)  They were also the subject of the most well known "robo-signing" case, which was the subject of a 60 Minutes story and Qui Tam action brought by the U.S. Government. The Soundview Trusts have also been the subject of many legal actions in state courts where findings were made that Deutsche had no standing to foreclose.

21.    GSAA Home Equity Trust 2006-16 ("GSAA Trust") is a common law trust formed in New York, with its principal place of business in New York, N.Y (See, http://www.sec.gov/Archives/edgar/data/1351547/000105640408001337/gsp0602f_ex34b.txt for a list of all GSAA 2006 Trusts.

22.    At all times mentioned herein, Defendant Wells Fargo Bank ("Wells Fargo") was a national bank with its headquarters and principal place of business in San Francisco, California, and the named plaintiff on the foreclosure action on the Golden Jubilee and Crown Pointe Properties.

23.    At all times mentioned herein, Defendant OneWest Bank was a national bank, and was the named Plaintiff on the foreclosure action on the Westpointe Properties.

24.    At all times mentioned herein, Defendant Suntrust Bank ("Suntrust") was a national bank, with its headquarters and principal place of business in Atlanta, Georgia, and was the named Plaintiff on the foreclosure action on the Shadowfield Property.

25. Defendant Korn Law Firm, P.A., at all times herein mentioned was a law firm with its principal place of business in South Carolina.

26. Brock and Scott, PLLC, at all times herein mentioned was a law firm with its principal place of business in South Carolina.

27. Rogers Townsend & Thomas, PC., ("Townsend") at all times herein mentioned was a law firm with its principal place of business in South Carolina.

## JURISDICTION AND VENUE

28. This Court has jurisdiction under The Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2605 et seq., The Fair Credit Reporting Act 15 U.S.C. 1681 et. seq. (15 U.S.C. § 1681p, ("FCRA"), and supplemental jurisdiction, pursuant to, 28 U.S.C. § 1367. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (c). Plaintiffs' action for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## II
## FACTUAL ALLEGATIONS
### As To All Properties
### Invalid, Belated, and Fraudulent Assignments

29. The assignments alleged in the Foreclosure Complaints ("Assignments") were manufactured for the purpose of enticing reliance by the state court and parties in interest.

30. As set forth more completely below, all the Assignments on all of the Properties were fraudulent.

31. The signor of the Assignments ("Signor") lacked any personal knowledge regarding the mortgages in the Foreclosure Actions ("Mortgages") and lacked any personal knowledge to determine that the entity he/or she signed for as nominee, had any ownership or control over the Mortgage loan or had the right to transfer the loan and were "robo-signed.

32.    Such Assignments were years after the Trusts into which they were purportedly pooled, had closed.

33.    Plaintiff was charged fees that increased and varied every month. Plaintiff caused a Qualified Written Request ("QWR")to be sent on each loan. All of the Plaintiff's requests were ignored. Defendant failed to reply within the allowable time period and refused to provide Plaintiff with the proper documents requested. To date of this complaint, Plaintiff has not received any itemized details, explanations, or documents requested.

34.    As to each property, the following is the irrefutable evidence that the person signing and Assignment was a known "robo-signor", was without authority, and committed fraud.

### 108 Westpointe Property – 2 Assignments.

(1) On or about September 17, 2007, Laura Hescott, executed an assignment from MERS to IndyMac Bank. Lexington County Mortgage Book 11120 at page 156. Ms. Hescott is a well-known robo-signor who worked for LPS, one of the largest robo-signing mills in the country. She claimed to be acting on behalf of various entities she did not work for. Actual photograph comparisons of varying signatures using her name can be found here: (http://stopforeclosurefraud.com/2010/03/12/topako-love-laura-hescott-christina-allen-eric-tate-officers-of-way-way-too-many-banks-part-deux-the-twilight-zone). Ms. Hescott also admitted to fraud in connection with the investigation of LPS by the government.

(2) The second Assignment was executed by Erica Johnson-Seck. She signed on behalf of IndyMac Bank FSB, assigning to OneWest Bank on June 15, 2010. Book 11120 at page 156. *Ms. Johnson-Seck was deposed in a Florida foreclosure action (Indymac Federal Bank, FSB v. Machado), where she admitted to being a robo-signer. She admitted to executing approximately 750 mortgage documents a week, including sworn documents outside the presence of a notary public. Moreover, she admitted that she did not even read the documents before signing them.* (The deposition may be obtained from Ice Legal (http://www.icelegal.com/Resources/Depositions).

## 123 Weaver - 3 Assignments

1) Kimberly Dawson robo-signer for 123 Weaver, recorded December 6, 2006 Book 11592 Page 159, as instrument# 2006067874. Kimberly Dawson is a well-known robo-signor having signed for many different entitles without any proof she was authorized for any. (See: http://doctelportal.wordpress.com/library/robo-docs).

2) On April 21, 2011, three attorneys from the Defendant Korn Law Firm executed an assignment from Countrywide to B of A (Book 7429, page133).

3) On February 1, 2012 an assignment was executed by Edward Gallegos, "assistant secretary of MERS". (Instrument 2012006680; Book 13256, page 199). Mr. Gallegos is another well-known robo-signor. (See; hofj.org/virtualoffice_files/18foreclosuresocr.pdf).

## 120 Westpointe – 3 Assignments

1) There was an assignment September 17, 2007, from IndyMac to MERS as nominee for Palmetto, again signed by robo-signor, Laura Hescott (see above). (Mortgage Book 11120, page 115).

2) Assignment dated January 28, 2007, Mortgage Book 14097, page 82. It is signed by well known robo-signor, John P. Gagnon. (See; http://4closurefraud.org/2011/07/20/fraud-digest-robo-signed-whos-signing-now-mers-assignments-and-trusts). Gagnon purportedly signed for the FDIC, and the FDIC suspended all foreclosures where his signature appeared.

3) Assignment dated June 15, 2007, Mortgage Book 14331, page 295. It was signed by Eric Johnson-Seck who admitted in deposition to being a robo-signor (see above.)

## 310 Shadowfield Drive - 3 Assignments

1) Suntrust Mortgage assigned its interest to MERS.  March 8, 2010; Mortgage Book R11071, page 48.  Conni Jones a robo-signor executed it. www.scribd.com/doc/82145542/Suspected-Robo-Signers. *However, at the time of the assignment, Suntrust Mortgage held no recorded interest in the Property.*

2) MERS recorded a "Corrective Assignment" that was recorded July 11, 2012. It purportedly assigned the interest of 1st Choice Mortgage to SunTrust more than two years after the previous assignment it was purportedly "correcting",

from SunTrust to MERS. It states the former was to correct the assignment and to "omit it". Thus, from this point forward, MERS had no interest. (Book 15622, page 320). The belated attempt to cover up the fraud just made matters worse.

3) SunTrust recorded an assignment October 17, 2013 to Fannie Mae (Book 16610, page 261.) It was executed by Doyle Mitchell claiming to be an "Asst. Vice President" of SunTrust.

He was a robo-signor. Doyle Mitchell has claimed to be a vice president of different entities other than SunTrust, a clear indication of fraud, including MERS. See; In The United States District Court For The Eastern District Of California, No. Cv-F-12-0878.
(http://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=1&ve
d=0CCsQFjAA&url=http%3A%2F%2Fwww.mersinc.org%2Fcomponent%2
Fdocman%2Fdoc_download%2F129-ca-ruiz-v-suntrust-
mortgage%3FItemid%3D&ei=MeJbU8b7OYWCyQG_24C4Cw&usg=AFQj
CNGiafPqxiIWK7aqFGJFFH-
uiyMpAA&sig2=vZvqCtDGt5PV1TK7E6ykQQ&bvm=bv.65397613,d.aWc).

## 201 Crown Point – 1 Assignment

1) An assignment from Wells Fargo N.A. to Deutsche Bank National Trust Co. as trustee for GSAA Home Equity Trust 2006-16. Book R10774, page 185; recorded October 19, 2007. It is executed by Elizabeth Mathis, a known robo-signor. This was established in the first robo-signing whistle blower case brought by the U.S. Government:
http://www.msfraud.org/law/lounge/szymoniak-whistleblower-suit_1-14.pdf.
Also see: http://www.scribd.com/doc/67177607/Robo-Signer-7-1.

### *The Shadowfield Property*

35.    On or about August 2005, Plaintiff executed a note and mortgage on the Shadowfield Property.

36.    The Lender was 1st Choice Mortgage/Equity Corp. of Lexington ("1st Choice").

37.    The Mortgage was recorded in Lexington County Register of Deeds as Instrument #2005847769.

38.    When Plaintiff began to experience financial problems, Plaintiff inquired about opportunities to modify the terms of his loan. The defendants promised modification but refused it at literally the same time through different persons. Plaintiff was denied any remedy and was forced to file bankruptcy.

39.    In 2010, Defendant Townsend caused a foreclosure complaint to be filed in the Lexington County Court, #10-CP-32-0987.

40.    The Plaintiff was SunTrust Mortgage, Inc. and not 1st Choice named lender on the mortgage.  No explanation is given as to why 1st Choice is not the Plaintiff even though it is still in business and is a member of MERS if it was truly the "lender".

41.    The Defendants were:  James Bradley Bailey, Bobbie L. Price, Deutsche National Trust Company ("Deutsche") ,and Soundview Home Loan Trust.  It makes no sense the Trusts were named Defendants.

42.    The roles of the parties, and in particular Deutsche and Soundview were not explained in any detail. In essence, the clear implication is fraud.

43.    By this time, the Banks and their counsel knew Plaintiff's residence, as did the state court since Bailey had appeared personally and had provided written communications. In fact, his address is shown in the court dockets for some of the Foreclosure Actions.

44.    Instead of personally serving Bailey, SunTrust and its counsel falsely stated they could not, and then claimed to serve Bailey by publication.

45.    A judgment of foreclosure was entered on or about October 5, 2010. However, a final Notice of Sale was not issued or acted on.

46.    According to the docket, the case was stayed and stricken from the Active Roster.

47.    The docket may be found at:  http://cms.lex-co.com/SCJDWeb/PublicIndex/CaseDetails.aspx?County=32&CourtAgency=32002&Casenum=2010CP3200987&CaseType=V9046.

48.    The Docket is incorporated herein by reference.

49.    The statements made in the Complaint that SunTrust was authorized to collect the loan were false.  The amounts claimed to be owing were false and included charges not authorized by the contracts or law.

50.    SunTrust has been the subject of numerous class actions, including "forced placed insurance cases" and improper conduct in connection with loan modifications under HAMP.

51.    It is currently under investigation for mortgage fraud as it reported in 2013 in its "10K" annual filing with the S.E.C.

**The Golden Jubilee Property**

52.    On or about January 27, 2006, Bailey executed a note and mortgage on the Jubilee Property.

53.    The Lender was Wells Fargo Bank, N.A. and the borrower was James B. Bailey.

54.    When Bailey began to experience financial problems, Plaintiff inquired about opportunities to modify the terms of his loan. The defendants promised modification but refused it at the same time. Plaintiff was denied any remedy and was forced to file bankruptcy.

55.    Plaintiff was charged fees that increased and varied every month.

56.    On or about December 8, 2011, Defendant Townsend cause to be filed a complaint in the Lexington County Court, #2011-CP-3204702.

57.    The Plaintiff was Wells Fargo Bank, N.A.

12
COMPLAINT

58.    The Defendants were: James Bradley Bailey, Deutsche Bank National Trust Company, Soundview Home Loan Trust. No details were provided as to why Deutsche was sued.

59.    In February 2012, the case was stricken from the active docket.

60.    The case was thereafter restored to the active docket and a judgment of foreclosure was entered on July 17, 2012.

61.    No final Notice of Sale has been issued or acted on.

62.    Bailey caused to be filed a motion in March 2014, which is pending. No response has been filed as of the date of filing of this complaint, and no hearing scheduled. Bailey has, or will, withdraw his motion in light of this filing.

63.    The case docket is incorporated herein by reference and can be found at: http://cms.lex-co.com/SCJDWeb/PublicIndex/CaseDetails.aspx?County=32&CourtAgency=32002&Casenum=2011CP3204702&CaseType=V

64.    The loan was purportedly pooled into the Soundview Trust.

65.    Fraudulent documents were provided in conformance with the Manual provided to Wells Fargo's attorneys.

*The Crown Point Property*

66.    A Mortgage was executed by Bailey in 2006, and was recorded as Instrument #2006887629 with the Lexington County Register of Deeds.

67.    The Lender is Wells Fargo Bank, N.A.

68.    The borrower is James B. Bailey.

69.    The Brock law firm caused a foreclosure complaint to be filed in March 2013.

70.    The summons and complaint have not been served.

71.    The Plaintiff is Deutsche as trustee for the GSAA Home Loan Trust 2006-16.

72.    The Defendants are numerous and include Bailey, and family trusts he was a party to.

73.    False statements were made in the Complaint including but not limited to statements that Deutsche was authorized to collect the loan, the amounts claimed to be owing were false and included charges not authorized by the contracts or law.  Deutsche could not be authorized to collect the loan because it has been sued by the investors, are represented by other counsel, and the GSAA Trust was, and is, void.

74.    The docket is incorporated herein by reference and can be found at: http://cms.lex-co.com/SCJDWeb/PublicIndex/PIError.aspx?County=32&CourtAgency=32002&Casenum=2013LP3200315&CaseType=V.

***The Weaver Property***

**The Foreclosure Complaint**

75.    A foreclosure complaint was filed on or about November 2012 by Defendant Korn, signed by John B. Kelchner et.al.

76.    The Plaintiff is B of A.

77.    The Defendants are Bobbie L. Price, Bradley Bailey, the Hennessees (former owners), J.P. Morgan Chase Bank N.A., South Carolina Department of Motor Vehicles, the

South Carolina Department of Revenue, and others. No details are provided as to why J.P. Morgan was a defendant.

78.    Certain defendants were later stricken.

79.    The foreclosure complaint was filed and alleged certain documents were executed and recorded with the intent of the court relying upon it that were fraudulent.

**Fraudulent Assignment**

80.    At the risk of being repetitive, details regarding this fraudulent Assignment are set forth again.

81.    On or about August 14, 2002, Kelly Olin and Shane Olin ("Olin") executed a promissory note ("Note") to America's Wholesale Lender ("AWL").

82.    On or about August 14, 2002, Olin executed a mortgage in favor of AWL, with Mortgage Electronic Registration System, Inc. ("MERS") as named as nominee for AWL which was recorded in the Office of the Register of Deeds for Lexington County, in Mortgage Book 7429 at page 133.

83.    On or about November 22, 2006, an assignment of mortgage ("2006 Assignment") was recorded in Mortgage Book 11592 at page 139 by MERS as nominee for AWL assigning the mortgage to Countrywide Home Loans, Inc. ("Countrywide").

84.    The individual signing the 2006 Assignment was not authorized to do so by the entity he or she claimed to be executing the Assignment for.

85.    The 2006 Assignment was manufactured for the purpose of enticing reliance by the state court and parties in interest.

86.    The 2006 Assignment was fraudulent.

87.    The signor of the Assignment ("Signor") lacked any personal knowledge regarding the Mortgage and lacked any personal knowledge to determine that the entity he/or she signed for as nominee, had any ownership or control over the Mortgage loan or had the right to transfer the loan.

88.    The Foreclosure Complaint included charges and fees not owed or proper under the loan agreements.

89.    Thereafter, on or about April 11, 2011 an assignment ("2011 Assignment") was recorded May 2, 2011; Mortgage Book 14843 at page 129, and Countrywide assigned the Mortgage to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP.

90.    The individual signing the 2011 Assignment was not authorized to do so by the entity he or she claimed to be executing the Assignment for.

91.    The 2011 Assignment was manufactured by the assignee for the purpose of enticing reliance by the state court and parties in interest.

92.    The signor of the 2011 Assignment lacked any personal knowledge regarding the Mortgage and lacked any personal knowledge to determine that the entity he/or she signed for as nominee, had any ownership or control over the Mortgage loan or had the right to transfer the loan.

93.    The 2006 and 2011 Assignments were presented to the state court at the direction of one or more of the Defendants and/or at the request and direction of agents and/or attorneys for Defendants in the Foreclosure Actions and was manufactured and/or fabricated by the Defendants at the direction of and with the knowledge and consent of the other defendants.

94.     Defendants involved in the 2006 and 2011 Assignments knew such were false documents.

95.     A judgment of foreclosure was entered on or about January 30, 2014 however, no final notice of sale has been issued or acted on.

96.     The judgment was obtained by use of the foregoing fraudulent assignments.

97.     The case has been stayed.

98.     As reflected in the court docket, a loan modification had been denied in May 2013. This was improper as has now been established in numerous lawsuits by governmental agencies and others as more specifically set forth below and established by Whistle-Blowers.

99.     The statements made in the Foreclosure Complaint that B of A was authorized to collect the loan were false. The amounts claimed to be owing were false and included charges not authorized by the contracts or law.

100.     The investor in the securitized trust have sued B of A as have numerous government agencies such that the allegation that B of A is properly authorized to foreclose and acted properly with regard to a loan modification are completely false.

101.     The state court docket is incorporated herein by reference and can be found at: http://cms.lex-co.com/SCJDWeb/PublicIndex/CaseDetails.aspx?County=32&CourtAgency=32002&Casenum=2012CP3201496&CaseType=V.

*The 108 Westpointe Property*

102.     A mortgage was recorded on the 108 Westpointe Property with the Lexington County Register of Deeds as Instrument # 2006031327.

103.    The lender was Palmetto South Mortgage Corp. ("Palmetto").

104.    Mortgage Electronic Registration System, Inc. ("MERS") is named as the nominee for the lender.

105.    The mortgage states on its face that it was prepared by Palmetto, which was not a licensed law firm in the state of South Carolina, and therefore the mortgage is void.

106.    Defendant Townsend caused a judgment of foreclosure to be entered on or about October 29, 2013.

107.    No final Notice of Sale has been issued or acted on.

108.    The state court docket is incorporated by reference and can be found here: http://cms.lex-co.com/SCJDWeb/PublicIndex/CaseDetails.aspx?County=32&CourtAgency=32003&Casenum=2009CP3200723&CaseType=V.

109.    The statements made in the Foreclosure Complaint that OneWest was authorized to collect the loan were false.  The amounts claimed to be owing were false and included charges not authorized by the contracts or law.

*The 120 Westpointe Property*

110.    On or about June 2006, Bailey executed a mortgage that was recorded as Instrument #2006031322 with the Lexington County Register of Deeds.

111.    The borrower is James B. Bailey.

112.    The lender is Palmetto.

113.    MERS is the nominee for the lender.

114. The mortgage states on its face it was prepared by Palmetto which is not a licensed law firm in the State of South Carolina and is therefor void.

115. On or about June 19, 2009 the Townsend Defendant filed a complaint.

116. The Plaintiff was OneWest Bank FSB.

117. The Defendants were Bailey, Soundview Home Loan Trust and Deutsche. No details are given as to why Soundview Trust and Deutsche were named.

118. OneWest, appeared to be claiming to be representing the interests of the investors, but this makes no sense since it included their representatives as Defendants. In addition, the investors and government agencies concerning this loan have sued OneWest.

119. The state court docket is incorporated herein by reference and can be found at: http://cms.lex-co.com/SCJDWeb/PublicIndex/CaseDetails.aspx?County=32&CourtAgency=32002&Casenum=2009CP3202810&CaseType=V.

### Invalid Assignments Because B of A Did Not Comply With Federal Court Settlements and Loan Modifications

120. As to B of A which is a plaintiff in some of the Foreclosure Actions, it is clear no proper assignments could have been made.

121. Countrywide was closed by the Office of Thrift Supervision and the FDIC was named Conservator on July 11, 2008. Furthermore, at that time, Countrywide ceased being a MERS Member. Therefore, MERS could not have assigned any interest in the loan as nominee for the original lender, B of A or Countrywide.

122. A Declaration of Attorney Steve Berman who filed the case of In Re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation in the United

States District Court District of Massachusetts, Case No. 1:10-md-2193 RWZ, and corroborating Declarations of William E. Wilson, Simone Gordon and Theresa Terrelonge, former B of A employees were filed. These witnesses verify that B of A managers had a business practice known as a twice monthly "blitz." B of A ordered case managers and underwriters to "clean out" the backlog of HAMP loan modification applications by denying any file where the financial documents were more than 60 days old, including files where the homeowner had provided all financial documents and fully complied with the terms of a Trial Period Plan. Case managers, underwriters and employees were rewarded handsomely with bonuses and gifts for trashing loan modification documents and indiscriminately foreclosing properties. A single team would "blitz" up to 1500 loan modifications approximately every 2 weeks.

123.    As of late last year, reports were still being made of wrongful acts by B of A. (see, http://www.bloomberg.com/news/2013-12-16/secret-inside-bofa-office-of-ceo-stymied-needy-homeowners.html. Mother of 2 autistic children improperly denied loan modification under HAMP).

124.    Plaintiff is informed and believes the other Bank Defendants herein, have engaged in the same or similar tactics.

**Further Allegations Regarding Securitization of All Loans**

125.    Defendant Trusts are common law trusts.

126.    Soundview Home Loan Trust 2005-4 ("Soundview") was formed in 2005 pursuant to New York law. The corpus of Soundview allegedly consists of a pool of residential mortgage notes allegedly secured by liens on residential real estate. Defendant Soundview has no officers or directors and no continuing duties other than to hold assets and to issue the series of

certificates of investment. A detailed description of the categories of mortgage loans is included in the securitization documents for Soundview Trust.

127.    The Pooling and Servicing Agreement ("PSA") lists the following as parties to Defendant Soundview. Depositor, FINANCIAL ASSET SECURITIES CORP., Servicers, Countrywide Home Loan Servicers, LP., JPMorgan Chase Bank, National City Home Loan Services, Inc. Trustee, Deutsche Bank National Trust Company. The PSA is a very long document and can be found here:

http://www.sec.gov/Archives/edgar/data/1347120/000088237706000078/d395885_ex4-1.htm

128.    According to the securitization documents only a servicer is authorized to collect loans including pursuing foreclosures.  Any representation that a trustee is authorized is false.

129.    One purpose of the PSA is to document that in the regular course of business Defendant securitization parties originate and acquire loans and desires, by the PSA, to confirm the terms and conditions under which Defendant Soundview will "acquire the mortgage loans" so originated.

130.    GSAA Home Equity Trust 2006-16 ("GSAA") is a common law trust formed under New York law in 2006.

131.    The corpus of GSAA allegedly consists of a pool of residential mortgage notes allegedly secured by liens on residential real estate. Defendant GSAA has no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment. A detailed description of the categories of mortgage loans is included in the securitization documents for GSAA.

132.   The parties were; GS MORTGAGE SECURITIES CORP., Depositor; GOLDMAN SACHS MORTGAGE COMPANY, Sponsor, WELLS FARGO BANK, NATIONAL ASSOCIATION, GS MORTGAGE SECURITIES CORP., Depositor GOLDMAN SACHS MORTGAGE COMPANY, Sponsor; WELLS FARGO BANK, NATIONAL ASSOCIATION, Master Servicer and Securities Administrator COUNTRYWIDE HOME LOANS SERVICING LP, AVELO MORTGAGE, L.L.C., GREENPOINT MORTGAGE FUNDING, INC., PHH MORTGAGE CORPORATION, Servicers.

133.   The Closing Date for the GSAA Trust was September 28, 2006.  (See: http://www.sec.gov/Archives/edgar/data/807641/000090514806005787/efc6-2338_emailform424b5.txt. At, page S-9.)

**Each of the Defendants Aided and Abetted Each Other in All of the Wrongful Acts**

134.   Defendants GSAA and Soundview Trusts issued the senior securities in the mortgage-backed Trust identified herein. These securities were duly registered with the SEC on registration statements. The registration statements and other reports and information regarding the Defendants are available at the SEC's Internet site at http://www.sec.gov. The materials are also available to read and copy at the SEC's Public Reference Room at 100 F. Street, N.E., Washington, D.C. 20549.

135.   The Notes were not duly endorsed, transferred and delivered to the Trusts prior to the Closing Dates.

136.   Pursuant to the PSA's for the Trusts, all mortgage files had to be transferred to the securitization parties including the original note which was to be endorsed, and a chain of

assignments of the mortgages must be recorded with the applicable Register of Deeds prior to the Closing Dates.

137.    The Trusts were formed under New York law, state that New York Law applies, and therefore New York law governs the operation of the Trusts. The PSA states:

> "SECTION 11.04
> Governing Law; Jurisdiction.
> This Agreement shall be construed in accordance with the laws of the State of New York, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws."

New York Estates, Powers & Trusts Law section 7-2.4, provides: "If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void."

138.    Defendant Trusts were created by the PSAs and those agreements establish a specific Closing Date, and any attempt to accept a loan after the Closing Date would be void as an act in contravention of the PSA.

139.    There is no indication that Plaintiff's loans were transferred into the Defendant Trusts pursuant to the PSAs before the Closing Date. Accordingly, Plaintiff alleges that the Note in this case was never lawfully negotiated and physically delivered to the Defendant Trusts.

140.    The recording of the mortgages did not occur by the Closing Dates, or ninety (90) days thereafter, but rather long after Defendant Trusts had closed. Said mortgages were ineffective, as Defendant Trusts could not have accepted the mortgages after the Closing Dates pursuant to the PSAs and the requirements for a REMIC Trust. If the recording of the mortgages

was made after the closing date, the non-compliance with the REMIC statutes would terminate

Defendant Trusts by extinguishing their tax-exempt status under the REMIC statutes.

141.    Therefore, the attempted foreclosures of Plaintiff's Properties, are and were

wrongful and void *ab initio*. (See, *Glaski vs. Bank of America National Association, et. al.*

(2013) 218 Cal. App. 4th 1079, 2013).

142.    Numerous courts around the U.S. besides *Glaski* have held that borrowers can

challenge defects in securitization. An appeal on this issue is pending before the U.S. Dist. Court

of Appeals in this, the 4th Circuit. (*Scheider v. Deutsche Bank et. al.*, United States Court of

Appeals for the Fourth Circuit, #13-1821).  In South Carolina, in dismissing a foreclosure action,

at least one court has held that the U.S. Supreme Court case, *Carpenter v Longen*, 83 U.S. 271, is

binding on South Carolina courts in that according to the highest court in the land, the Note and

Mortgage must be transferred together to be effective for the assignee.

    a.    The Mortgages authorize only the lender- beneficiary (or its assignee), to

        (i) accelerate the loan after a default and (ii) elect to cause the Properties

        to be sold; and

    b.    In the Foreclosure Actions, a non- holder of the Mortgage, was claimed to

        be the beneficiary by Defendants, rather than the true beneficiary.

143.    Defendants and each of them conspired, engaged in a common enterprise, and

engaged in a common course of conduct to accomplish the wrongs of herein. The purpose and

effect of the conspiracy, common enterprise, and common course of conduct complained of was,

*inter alia*, to financially benefit Defendants at the expense of Plaintiff by engaging in fraudulent

activities. Defendants accomplished their conspiracy, common enterprise, and common course of

24
COMPLAINT

conduct by misrepresenting and concealing material information regarding the servicing of loans, and by taking steps and making statements in furtherance of their wrongdoing as specified herein. Each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution to and furtherance thereof. Defendants' wrongful acts include, *inter alia*, all of the acts that each of them are alleged to have committed in furtherance of the wrongful conduct of complained of herein.

144.    For example, the Law Firm defendants knew there was a systematic process to hide the information requested in QWRs.

145.    Any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Plaintiff could not have discovered, did not discover, and was prevented from discovering, the wrongdoing complained of herein.

146.    The issues for which Plaintiff is seeking resolution do not only include the question of whether or how much they may owe on the loan. The issue primarily needing to be resolved is what entity may actually own the loan and may have the right and standing to enforce the terms of the purported Note and Mortgage. The Court should not condone the Defendants 'fraudulent and predatory lending and servicing practices and allow it to collect money it was and is not owed. Simply put, the Court should not allow the Bank Defendants to trample over 200 years of well-settled property laws just because Plaintiff may "owe somebody the money".

147.    Plaintiff's allegations are based on: (1) analysis of the Plaintiff's Property's recorded county records; (2) direct written and oral communication with Defendants; (3) their

counsel's research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly available securitization documents & practices; (4) a review of the purported recorded documents fraudulently signed; (5) a review of the purported Declaration of Compliance fraudulently signed; (5) a review of the PSAs and other documents filed with the SEC for Defendant Trusts.

148.    None of the BANK Defendants can demonstrate or document that Plaintiff's Notes were ever properly endorsed, and the mortgages simultaneously assigned and both properly perfected and transferred to the Defendants or any other entity.

149.    Plaintiff relied on the Bank Defendant's misrepresentations and has been damaged, inter alia, in the following ways: (1) he has been paying the wrong party for an undetermined amount of time and overpaid interest and other penalties that were miscalculated; (2) he has suffered damage to his credit reports and scores; (3) Plaintiff has expended significant funds to cover the cost of attorneys' fees and related costs; (4) Plaintiff has suffered damage to his reputation in the community; (7) Plaintiff is unable to determine whether he sent monthly mortgage payments to the right party; (8) multiple parties may seek to enforce the debt obligations against Plaintiff; and (9) any would-be buyer of Plaintiff's Properties will find themselves in legal limbo, unable to know with any certainty whether they can safely buy Plaintiff's Properties or get title insurance (10) Plaintiff has been denied the opportunity to negotiate the terms of his loans to cure the defaults with the proper parties.

150.    Plaintiff seeks a court ruling as to whether the mortgages secured any obligation of Plaintiff such that Bank Defendants could foreclose on the Plaintiff's Properties or collect Plaintiff's loan payments; and a final judgment granting Plaintiff quiet title to his Properties.

151.    The Bank Defendants have received more than 100% compensation for Plaintiffs loans through moneys paid by investors, the FDIC and/or insurance, and have been paid in full in connection with the Trusts.

152.    For all of the foregoing reasons, Plaintiff alleges a controversy surrounding the title is evident because there are no recorded Mortgages to the proper purported Note Holders.

153.    Additionally, Plaintiff claims the Bank Defendants have no authority to foreclose for lack of standing because said Defendants did not have any perfected security or beneficial interest in the purported Notes or Mortgages. Not only is the creation of the judicial foreclosures as well as one or more of the documents signed by Defendants, fraudulent and deceptive, but an unlawful criminal violation of South Carolina laws. .

154.    The actions of Defendants that initiated a foreclosure on the Plaintiff's Properties were without any authority whatsoever. Therefore any orders in the state courts are void since Defendants brought the Foreclosure Actions without being the mortgagee, beneficiary, or authorized agent. Defendant's employees and the Law Firm Defendants signed foreclosure documents although they had no agency authority to do so from the Defendant Trusts.

155.    The titles to Plaintiff's Properties are about to be stolen from him, and he is entitled to have that title restored and recover damages according to proof.

156.    The conduct of Defendants has led to the imminent loss of Plaintiff's Properties and Plaintiff is entitled to pecuniary damages. The pecuniary damages include, but are not limited to, the costs of removing the cloud from the title, attorneys' fees and costs, in an amount to be proven at trial.

157.    The conduct of Defendants was malicious because said Defendants knew the identity of the current and true beneficiary of Plaintiff's Mortgages, yet still wrongfully recorded and filed in court the fabricated documents so as to illegally foreclose, slander the Plaintiff's credit and title to the Plaintiff's Properties, and make said title unmarketable.

158.    The titles to Plaintiff's Properties have been rendered unmarketable and unsalable because of the possibility of multiple claims being made against it. If the foreclosures are not cancelled, Plaintiff will be incurably prejudiced. Plaintiff will be denied the opportunity to identify the true and current creditor and exercise his statutory rights to cure any alleged default.

159.    Any amount allegedly owed under the Note is subject to equitable offset by the damages owed to Plaintiff from the Defendants and others yet to be determined.

160.    Due to improper procedures conducted by Defendants, the true owners of the Notes and Mortgages are certainly not any of these Defendants.

161.    Defendants are enforcing a debt obligation in which they have no pecuniary, equitable or legal interest. Defendants' conduct is part of a fraudulent debt collection scheme.

162.    Given the competing allegations anticipated by the parties hereto regarding the validity of the Mortgages, should the Court deem the Mortgages and foreclosures invalid, Plaintiff seeks a declaratory judgment to establish whether Defendants obtained the Notes and/or Mortgages by any other legal means, and the respective rights and obligations of the parties under the Loans.

163.    Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) he will again be denied the right to conduct discovery and have Defendants' claims verified by a custodian of records who has personal knowledge of the

Loans and all transactions related to them; and (2) he will be denied the opportunity to challenge the Mortgages and foreclosures; 3) he has and will face improper foreclosures; 4) he will be denied the right to peaceful use and enjoyment of this unique real property.

164.    Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties.

### III
### FIRST CAUSE OF ACTION
## VIOLATION OF THE REAL ESTATE SETTLMENT PROCEDURES ACT
### 12 U.S.C. § 2605 et seq.
### (Against All Defendants)

165.    Plaintiffs re-allege and incorporate herein by reference each and every allegation contained above as though set forth in full.

166.    The Subject Loans are mortgage loans subject to the provisions of RESPA as set forth at 12 U.S.C. § 2605 et seq.

167.    Plaintiff, sent Qualified Written Requests ("QWRs") and other statutory demands as defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), regarding the Properties and Loans.

168.    In the QWR, Plaintiff stated his belief the accounts in connection with the Subject Loans were not in default regarding the amounts defendants herein claimed to be owing and requested that defendants herein correct the error.  Plaintiff further requested all documents related to securitization of the loan.

169.    Defendants did not provide any of the requested information.

170.    Defendants violated RESPA by, among others, failing to provide a Servicing Statement as set forth in 12 U.S.C. § 2605(a); Reg. X  § 3500.21(b); and did not properly respond to Plaintiff's Qualified Written Request as set forth in 12 U.S.C. § 2605(e) and Reg. X §

3500.21(e); by failing to provide the information requested by Plaintiff, failing to make corrections to Plaintiff's account, and provide written notification of correction; and, by failing to provide a written explanation of why the servicers, defendants, believed the account in connection with the Subject Loan was correct, along with the name and telephone number of the representative in response to the QWRs.

171.    Defendants violated RESPA 12 U.S.C. § 2605(e)(1)(A), by failing to provide a written response acknowledging receipt of the Plaintiff's Qualified Written Request ("QWR").

172.    Defendants violated RESPA, 12 U.S.C. § 2605(e)(2)(C), by failing to provide Plaintiff with the information and documentation requested, or an explanation of why the information sought was unavailable Defendants violated RESPA, 12 U.S.C. § 2605(e)(2) (C) , by failing to provide Plaintiff with the information and documentation requested, or an explanation of why the information sought was unavailable.

173.    Defendants violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to make appropriate corrections to the Plaintiff's account in response to the QWR, including the crediting of any late charges or penalties, and failing to transmit written notice of such corrections to the Plaintiffs.

174.    Defendants violated RESPA, 12 U.S.C. § 2605(e)(2) by refusing to cease its collection efforts and foreclosure proceedings after receiving the Plaintiff's QWR by continuing to threaten or conduct a foreclosure.

175.    Defendants violated RESPA, 12 U.S.C. 2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by the Plaintiff that were related to their QWR.

176.    Defendants named herein have engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605 and have and continue to conceal information.

177.    As a direct and proximate result of defendants' failure to comply with RESPA, as set forth herein, Plaintiff has suffered and continues to suffer damages and costs of suit. Plaintiff is entitled to recover statutory damages, actual damages in an amount to be determined at trial, costs and reasonable attorneys' fees incurred herein.

**IV**
**SECOND CAUSE OF ACTION**
**Violation of the Fair Credit Reporting Act § 1681 et. seq.**
**(Against All Bank Defendants)**

178.    Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth herein.

179.    Defendants are parties who are regulated by the Fair Credit Reporting Act ("FCRA") as providers of information.

FCRA 15 U.S.C. § 1681s-2 provides:

(a)    Duty of Furnishers of Information to Provide Accurate Information

    (1)    Prohibition

        (A) Reporting information with actual knowledge of errors. A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

(B) Reporting information after notice and confirmation of errors.

A person shall not furnish information relating to a consumer to

any consumer reporting agency if:

    (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

    (ii) the information is, in fact, inaccurate.

180.    As set forth above, the Bank Defendants reported Plaintiff to the credit bureaus providing them with false information.

181.    Prior to that time, Plaintiff had a credit score in the 700's, but afterwards he had a very poor credit rating.

182.    Credit ratings have become of paramount importance in connection with many different types of financial and other transactions.

183.    Plaintiff was damaged as alleged herein and by being denied loans and other financial transactions due to the low credit score.

## V
### THIRD CAUSE OF ACTION
### CANCELLATION OF INSTRUMENTS FOR FRAUD OR OTHER IMPROPER CONDUCT

184.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

185.    F.R.C.P. and S.C.R.C.P. as well as federal case law from the United States Supreme Court and the South Carolina Supreme Cort provide that any court order or judgment obtained through fraud or other misconduct is void *ab initio*.

32
COMPLAINT

186.    Since the court had no jurisdiction to render such order or judgment, there is no time limit for bringing an action to set aside the judgment or order, which may be done, in a separate legal action.

187.    Further, since Defendants had no legal standing to bring a Foreclosure Actions, the state court had no jurisdiction or power to act at all, and any such proceedings are void as a matter of law. (See, *In Re Veal*, 450 B.R. 897 (9th Cir. BAP 2011) for an in depth discussion of standing in foreclosure cases).

188.    Each of the written instruments described above in connection with each Property was recorded with the South Carolina Register of Deeds and/or filed with the state court.

189.    The written instruments sought to be cancelled in this cause of action include the mortgages and any state court judgments and orders, and should be cancelled, and Plaintiff is entitled to attorney's fees. If the written instruments are not canceled Plaintiff will be deprived of title and possession of his Properties, and title to his Properties will have been stolen from him.

## VI
## FOURTH CAUSE OF ACTION
## VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
### (S.C. Code 39-5-10 Et. Seq.)
### [Against All Defendants]

190.    Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

191.    Defendants misrepresented material information by causing documents to be recorded and filed with the Registers of Deeds and state court containing unauthorized signatures.

192.    Defendants, and each of them, had knowledge of such falsity, for purposes of executing a foreclosure of Plaintiff's Properties.

193.    Defendants further misrepresented to the public at large by using their power to make attempts to transfer Plaintiff's mortgages after the closing dates of the PSAs, thereby providing false information to the public and financially interested parties that the Plaintiff's

Properties were properly transferred thereby allowing Defendants, and each of them, to attempt to foreclose.

194.    Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date.

195.    Specifically, as fully set forth above, Defendants engage in deceptive business practices with respect to the initiation of foreclosure proceedings by utilizing falsified documents recording those documents and filing pleadings with the state court in an effort to deceive the public at large as to the validity of such documents. In addition, Defendants engaged and continue to engage in deceptive practices by:

           a.    Instituting improper foreclosure proceedings to generate unwarranted fees;

           b.    Executing and recording false and misleading documents;

           c.    Executing and recording documents without the legal authority to do so;

           d.    Failing to disclose the principal for which documents were being executed and recorded;

           e.    Acting as beneficiaries and/or trustees without the legal authority to do so;

           f.    Keeping false and erroneous records of payments made by Plaintiff;

           g.    Keeping false and erroneous records of charges to Plaintiff; and

           h.    Other deceptive business practices.

196.    Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated The South Carolina Unfair Trade Practices Act (S.C. Code 39-5-10 Et. Seq.)

197.    The scheme implemented by Defendants is designed to defraud South Carolina consumers and enrich the Defendants.

198.    The foregoing acts and practices have caused substantial harm to South Carolina consumers.

199.    Defendants' unfair, unlawful, and fraudulent business practices and false and misleading representations present a continuing threat to members of public in that other

1  consumers will be defrauded into having their properties improperly sold at foreclosure. Plaintiff
2  and other members of the general public have no other adequate remedy of law.

3      200.    Defendants have violated South Carolina's criminal laws by filing or causing the
4  Mortgages to be filed with the County Register of Deeds in connection with Plaintiff's Loan
5  transactions with knowledge that the documents contained deliberate misstatements and
6  misrepresentations.

7      201.    Defendants facilitated, aided, and abetted the illegal, deceptive, and unlawful
8  foreclosure proceedings.

9      202.    Defendants have been acting in a manner to mislead Plaintiff and the courts into
10 believing that they had been assigned an interest in the Loans, and as such had the authority to
11 initiate foreclosure proceedings on Plaintiff's Properties.

12      203.    The conduct described above by Defendants was malicious because they knew
13 that the Note and Mortgages were not properly assigned. However, despite such knowledge,
14 Defendants continued to move forward with a foreclosure action on Plaintiff's Properties, and
15 engaged in other unlawful foreclosure practices. Defendants have developed a practice of
16 recording false assignments of deeds of trust in order to initiate foreclosure proceedings on South
17 Carolina consumers.

18      204.    As more fully described above, Defendants' acts and practices are unfair and the
19 harm caused by their conduct outweighs any benefit that their conduct may have.

20      205.    The foregoing acts and practices have caused substantial harm to South Carolina
21 property owners, including Plaintiff.

22      206.    Plaintiff is aware of the existence of documents including but not limited the
23 Manual produced by Defendant Wells Fargo instructing its "foreclosure mill law firms" how to
24 create and use fraudulent and forged documents to foreclose.

25      207.    The documents contain information verifying the allegations of this complaint,
26 that the Defendants do not own the subject loans, do not have the right to foreclose on Plaintiff's

27
28

Properties and that Defendants will either deny the existence of such information or oppose every effort by Plaintiff to obtain such information.

208.     As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiff has been injured in that a cloud has been placed upon title to Plaintiff's Properties and Defendants have failed to remove this cloud from Plaintiff's titles.

209.     Moreover, Plaintiff has been deprived of the ability to negotiate a loan modification with the true holder of his Loans.

210.     Plaintiff has also been damaged, inter alia, in the following ways: (1) the title to his Properties have been threatened to be stolen from him; (2) he is unable to determine whether he sent his monthly loan payments to the right party; and (3) he has expended significant funds to cover the cost of attorneys' fees and related costs.

211.     Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants violated several laws and must pay restitution related to their unfair, unlawful, and deceptive business practices.

## VII
## FIFTH CAUSE OF ACTION
## WRONGFUL FORECLOSURE
### (Against All Defendants)

212.     Plaintiff incorporates each and every one of the preceding paragraphs of the complaint into this cause of action, as though fully set forth herein.

213.     Based on Defendants' allegations in state court, it appears Defendant Trusts were the purported foreclosing parties in interest upon Plaintiff's Properties.

214.     As set forth above the Trusts themselves claim as purported beneficiaries of the Trusts that the Trusts are void ab initio. None of the Defendants had the authority to exercise the power of sale within the Mortgages, and Defendants could not properly initiate foreclosure based upon any alleged defaults known or believed to exist.

215.     Defendants caused fraudulent Assignments of the Mortgages to be recorded and used them to pursue the Foreclosure Actions as set forth above.

216.    Defendants initiated foreclosure without privilege and with malice, as said Defendants knew that they had no interest in the Note and Mortgages. Therefore, despite the fact that said Defendants knew they had no standing to proceed with foreclosures, they proceeded to process foreclosure sales.

217.    Defendants falsely represented to Plaintiff that if he did not pay, Plaintiff's Properties would be sold at a public auction. Such actions were malicious and fraudulent. In fact, if any sale takes place, it would be void, for the reasons stated herein.

218.    Plaintiff alleges said documents used to prosecute judicial foreclosure were false, void, and without privilege, for the reasons stated and discussed herein.

219.    At no point in time did the purported original beneficiary of the Mortgages, properly endorse, assign, sell, transfer or in any way convey any perfected security interest in Plaintiff's Properties to any of the Defendants herein.

220.    As set forth above, at the time Defendants commenced judicial foreclosure proceedings, they had no legal or equitable interest in the Notes and Mortgages, and thus no amount was owed from Plaintiff to Defendants.

221.    In addition to Defendants never having the legal authority to foreclose, the foreclosure proceedings are void and cancelled as set forth above due to the security interest in the Mortgage being nullified by the actions of MERS and others.

222.    Plaintiff further alleges that any amount allegedly owing under the Notes and Mortgages are offset by the damages owed to him from all Defendants.

### VIII
### SIXTH CAUSE OF ACTION
### QUIET TITLE
### (Against All Defendants)

223.    Plaintiff incorporates each and every one of the preceding paragraphs of the complaint into this cause of action, as though fully set forth herein.

224.    Plaintiff alleges that at all relevant times mentioned in this complaint, Defendants, and each of them, claim an interest in the Plaintiff's Properties as follows: that it is the title

and/or fee simple owner of the Plaintiff's Properties, and/or that each of the Defendants claims to have perfected a beneficial interest, security interest or other legal claim in the Plaintiff's Properties.

225.    Assignments of real property within South Carolina must be recorded; otherwise there is no uniform method that would operate to provide actual or constructive notice of the transfer of Properties.

226.    Under the law, to perfect the transfer of mortgage paper as collateral the owner must physically deliver the notes to the transferees. (South Carolina U.C.C.). Law established by the U.S. Supreme Court requires that a promissory note be unambiguously endorsed and physically delivered to the intended assignee. Without physical transfer, the sale of the note would be invalid as a fraudulent conveyance or as unperfected. Actual ownership and physical possession is a condition of enforcement of a note.

227.    An assignment by endorsement and delivery of the note alone may accomplish a transfer of the security, but is insufficient in that it is without the necessity of a formal assignment of the Mortgage itself, and the Mortgage securing a note is a mere incident of the debt secured thereby, but an incident with no independent, separate, or separable ascertainable market value.

228.    Assignment of a mortgage without a transfer of the indebtedness confers no right, since debt and security are inseparable and the mortgage alone is not a subject of transfer. A mortgagee's purported assignment of a mortgage without a joint simultaneous transfer of the debt [promissory note] that is secured is a legal nullity. A mortgage possesses no assignable quality independent of the debt; it may be neither assigned nor transferred apart from the debt, and any attempt to assign the Mortgage without a transfer of the debt is without legal effect. (South Carolina U.C.C.).

229.    "The note and the mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." A Mortgage is inseparable from the debt and always abides with the

debt; alone it is worthless. A Mortgage possesses no assignable quality independent of the debt; it may be neither assigned nor transferred apart from the debt, and any attempt to assign the trust deed without a transfer of the debt is without legal effect.

230.     Federal and South Carolina statutory law have been designed to protect borrower's rights in the judicial foreclosure context by requiring the recording of any assignment of mortgage to assignee in order for assignee to foreclose. The law is not limited in scope only to assignees of mortgage interests, but also applies to successors and assignees under Mortgages to mandate the recording of any such transfer of interest in order for the event to meet the legal validity necessary to permit foreclosure.

231.     A paramount requirement under long-standing traditional principles of property law requires that the Mortgage was to "follow the Note." There was virtually no exception. In fact, once the original Note and original Mortgage were physically separated, their mutually dependent existence was terminated and the Mortgage became a nullity. Such consequence may appear archaic, but this corollary has served an important function since its inception: protection of the parties. This deep-seated imperative remains sound law today. South Carolina law intends the same effect. A purported transferee of a Note does not acquire status as "holder" of that Note where the rights were transferred by separate instrument without valid endorsement or negotiation of the subject note. (*Carpenter v Longen*, 83 U.S. 271).

232.     Plaintiff seeks to quiet title against the claims of Defendants and any successors or assignees have no right to title or interest in the Properties and no right to entertain any rights of ownership including rights of possession.

233.     Plaintiff seeks to quiet title as of the date the Mortgage was originally recorded. As alleged above, Plaintiff contends that any foreclosure hereafter conducted would be void ab initio, as a result of the failure to timely place the loan for Plaintiff's Properties into Defendant Trusts. Plaintiff further contends that the parties whose signatures appear on the foreclosure documents were not authorized to sign on behalf of any of the Defendants herein.

234.    Plaintiff seek a judicial declaration that the title to Plaintiff's Properties are vested in Plaintiff alone, that Defendants and each of them be declared to have no interest estate, right, title or interest in the Plaintiff's Properties and that Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in Plaintiff's Properties.

235.    Accordingly, the Court should rule that Plaintiff's Properties remain Plaintiff's and award consequential damages as proven at trial, but not less than $1,000,000.00.

## VIII
### SIXTH CAUSE OF ACTION
### VIOLATION OF SOUTH CAROLINA CODE §30-9-30
### (Against All Defendants)

236.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length.

237.    A PSAs were executed in connection with the Pools of loans, the securitizing parties claimed the Loans were put into.

238.    The PSAs created the Trusts consisting of a segregated pool of assets comprised of Mortgage Loans.

239.    The PSAs contain express requirements, terms, and conditions governing the administration of the Trusts which were filed with the Sec.

240.    In connection with the securitization of loans associated with the Trusts, a Real Estate Mortgage Investment Conduits ("REMIC") was also formed to obtain tax benefits.

241.    The PSAs provide that the Seller and Conduit Seller ("Sellers") sold Mortgage Loans to the Depositor and the Depositor sold the purchased loans into the Trusts.

242.    The Master Servicer agreed to service the loans pooled into the Trust.

243.    Subsequent to these actions, certificates representing the beneficial interests of the Trusts, were executed and authenticated by the Trustees. These certificates were sold to investors in different classes in the Trusts.

244.    The PSAs expressly states that the Trusts "shall be governed by, construed and enforced with the laws of the State of New York."

245.     New York law requires strict compliance and adherence to the Trust documents, including the Trust. Any action in contravention of the PSA is void under New York trust law.

246.     In addition, the Trust is subject to certain rules and tax consequences for prohibited transactions under the Internal Revenue Code in the event any regular interests are not properly pooled in the Trust.

247.     The deadline to assign, convey and transfer the mortgage loan and notes into the Trusts was the Closing Date.

248.     On the Closing Dates, all right title and interest in the Plaintiff's mortgage loan was purportedly transferred and assigned to the Trust.

249.     Therefore, the Trust allegedly owned the Plaintiff's mortgage loan and note as of the Closing Dates.

250.     The securitizers were required, prior to the Closing Date or within 20 days thereafter, deliver to the Trustee or Custodian, among other documents:  (1) the original note endorsed in blank; (2) the original Mortgages with evidence of recordation; and 3) assignments of any related Mortgages in recordable form.

251.     The PSAs provide the Master Servicer, within ninety days of the Closing Date, will record assignments to the Trust of the lien of any mortgage property.  In the event the Trustee is notified by counsel to the effect that recording the assignment is required to protect interests in the related mortgage loan, the Trust provides the Master Servicer can record an assignment at its own expense. However, the Trustee is the party that must cooperate and execute the assignment prepared by the Master Servicer.

252.     A complete chain of title evidencing the transaction by properly executed endorsement and assignments showing a complete chain of title described in the PSAs, would be as follows:

Originator ⇒ Sponsor ⇒ Depositor ⇒Trust

253.     The chain of assignments evidencing any transfer in interest, or endorsements contemplated by the PSAs, does not appear in the Lexington County Register of Deeds Office.

254.    The assignments appearing in the Register office shows the other assignments to entities that did not have any interest in Plaintiffs' Properties.

255.    The Assignments recorded by Defendants purported to create liens on Plaintiff's property or claims upon Plaintiff's Property for the payment of a debt or security interest as defined by South Carolina law.

256.    In excess of thousands of fraudulent liens, claims against real property, assignments, discharges, foreclosure notices, or foreclosures of deeds of trust have been recorded in the records in the Registers offices throughout South Carolina by Defendants.

257.    All documents attempting to transfer title into the Trust recorded with a Registers office after the Closing Date are fraudulent.

258.    For over 100 years, South Carolina law has provided that the grantee or beneficiary of a mortgage is the lender on the note secured by the mortgage. So long as the debt exists, the "security will follow the debt," and the assignment of the debt carries with it the rights created by the deed of trust securing the note.

259.    The South Carolina statutes require the county Registers of Deeds to file proper real estate documents and reject them if they have reason to believe the filing is fraudulent.

260.    The purpose of the statutes, inter alia, was and is, to prevent the recording of fraudulent foreclosure documents.

261.    Defendants made, presented, and used documents and court records with knowledge that the document or other record is a fraudulent lien or claim against real property or an interest in real property or fraudulent court record and without following the procedures for offering loan modifications as required by law and failed to act in conformance with the PSAs.

262.    Defendants made presented, or used a document or other record with the intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under South Carolina laws, evidencing a valid lien or claim against real property or an interest in real property.

263.    The documents or records filed or caused to be filed by Defendants, falsely represent Defendants' interest in the real property that is the subject of such instruments, causing damages and injuries to Plaintiff.

264.    Defendants knew at the time of such filing the instruments falsely represented Defendants' interest that is the subject of such instruments, causing damages and injuries to Plaintiffs.

265.    Defendants conduct violated S.C. Code Annotated §30-9-30 et. seq. and the statutes it references, especially on or after Closing Date of Trusts for which Plaintiff seeks judgment against Defendants, jointly and severally, for a Declaration the foreclosures are void.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against the Defendants, and each of them, jointly and severally, as follows:

1.    For an order compelling Defendants to remove any instrument, including the Mortgages which do or could be construed as constituting a cloud upon Plaintiff's titles;

2.    For a declaratory judgment determining the rights and obligations of the parties as to Plaintiff's Properties, based on any other matter based on contract or any of the documents prepared in relation to Plaintiff's Properties;

3.    For a court finding that Defendants acting prior to the institution of foreclosure proceedings violated South Carolina statutes regarding foreclosure procedures, and that these acts were done fraudulently;

4.    For the Court to issue an order restraining all Defendants, their agents, or employees from continuing or initiating any action against Plaintiff's Home and enjoining all Defendants, their agents, or employees from doing so during the pendency of this matter;

5.    For a declaration that Plaintiff is the true and rightful owners of Plaintiff's Properties;

6.    For issuance of an Order canceling the mortgages and foreclosures;

7.    For issuance of an Order quieting titles in favor of Plaintiff and against Defendants;

8.    For compensatory, special and general damages in an amount according to proof at trial, but not less than $1,000,000.00 against all Defendants;

9.    For punitive damages in an amount to be determined by the Court against all Defendants;

10.   Pursuant to The South Carolina Fair Trade Act, that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of unfair competition; including, but not limited to, the violations alleged herein;

11.   For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees according to proof;

12.   For reasonable attorney's fees and costs; and

13.   For reasonable costs of suit and such other and further relief as the Court deems proper.

DATED:    May 4          , 2014          By: _James Bradley Bailey_
                                         JAMES BRADLEY BAILEY